# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| F. JOE YEAGER, | CASE NO. 05CV2089-BEN (WMC) |
| Plaintiff, | **ORDER DISMISSING PLAINTIFF'S THIRD AMENDED COMPLAINT WITH PREJUDICE [D.E. # 96, 98, 99, 100, 112, 113, 114, 115, 117, 118, 119, 121, 122, 124, 127, 128, 216]** |
| vs. | |
| CITY OF SAN DIEGO CALIFORNIA, et al., | |
| Defendants. | |

Plaintiff F. Joe Yeager's ("Plaintiff") Third Amended Complaint ("TAC")[1] alleges multiple constitutional violations by numerous defendants. (Doc. No. 95.) All of the violations ultimately stem from Plaintiff's dissatisfaction with: 1) his criminal misdemeanor judicial proceedings in California State Court; 2) his subsequent California State appeals; and 3) the related civil actions concerning his violation of a municipal anchorage ordinance.[2] Plaintiff names at least 94 ascertainable defendants including the City of San Diego, the City Manager, the Director of Parks and Recreation, the Chief of Police, various police officers, the San Diego Unified Port District and their attorneys, the San Diego Port Tenants Association Management and

---

[1]  Although Plaintiff designates the operative pleading his Sixth Amended Complaint, the Court recognizes the operative Complaint as the Third Amended Complaint ("TAC").

[2]  See e.g., *Yeager v. City of San Diego,* California Court Case Number GIC806954.

1   members, numerous marinas in San Diego as well as local hotels.[3]  Additionally, Plaintiff alleges

2   there are at least 12 "active participants," which include San Diego Superior Court Judges and

3   City Attorneys.  Presently before the Court are Respondents' Motions to Dismiss.  (Doc. Nos. 99,

4   100, 112, 113, 114, 115, 117, 118, 121.)  For the following reasons, the Court **GRANTS WITH**

5   **PREJUDICE** Respondents' motions.

6                                    **I.   BACKGROUND**

7           This action has endured a long history before this Court and an even longer history

8   between the parties.  Apparently Plaintiff, on more than one occasion, violated a City of San Diego

9   ordinance prohibiting anchorage in Mission Bay Park for a period longer than 72 hours in any 7-

10  day period.[4]  Two criminal complaints were filed against Plaintiff for violation of San Diego

11  Municipal Code ("SDMC") 63.25.71 (San Diego Superior Court Case Nos. M934007 and

12  M951159).  In connection with one of these incidents, Plaintiff was sentenced to 90 days in jail

13  and issued a three-year stay away order from Mission Bay Park and other related areas.  Plaintiff

14  appealed both criminal complaints in San Diego Superior Court.

15          On December 14, 2001, Plaintiff was declared a vexatious litigant in the California Court.

16  *See Yeager v. Blind Winstons LLC*, California Case No. GIC768358.  On July 16, 2004, Plaintiff

17  brought a federal action regarding the constitutionality of SDMC § 63.25.71 against several of the

18

19

20          [3]  The TAC is 83-pages long by itself.  In addition to the TAC, Plaintiff also filed an *ex parte*
    Application with the Court for Leave to File a Brief on the TAC.  The accompanying TAC Brief was
21  117 pages and contained 144 additional pages of exhibits.

22          [4]  San Diego Municipal Code ("SDMC") § 63.25.71 entitled, "Living on Board Vessels,
    Overnight Anchorage Regulated," states in relevant part:
23          (a)  . . . It is unlawful for any owner of any vessel to occupy it or allow it to be
            occupied overnight in Mission Bay Park for a period of more than ninety (90) days,
24          whether successive or cumulative, during any one calendar year. . . . (b) . . . In the area
            of Mariners Basin, a vessel may be permitted to remain moored or anchored for a
25          period not to exceed seventy-two (72) hours during any seven (7) consecutive days,
            provided that the owner or person in command of such vessel has first received
26          permission from the Director and provided that at least one person of eighteen years
            or older remains on board from dusk to dawn. . . . (c)  The Director may without notice
27          remove any vessel . . . stored or left in violation of subsection 63.25.71(b), and the cost
            of removal and storage may be recovered by the City against any person responsible
28          therefor through collection processes or proceedings . . . and in any case prior to
            release of the impounded vessel to the registered owner. . .

1   current defendants.[5]  The action was ultimately dismissed on March 15, 2005, in light of the

2   pending state court criminal case pursuant to the *Younger* abstention doctrine.[6]

3          On November 8, 2005, Plaintiff filed his original 83-page complaint, which alleged

4   numerous wrongs by a multitude of defendants.  On March 17, 2006, Plaintiff filed an *ex parte*

5   application for leave to amend his complaint, which was granted by the Court on March 24, 2006.

6   Plaintiff's First Amended Complaint ("FAC") was filed on March 24, 2006, which named over

7   140 Defendants.

8          On June 6, 2006, upon Defendants' motions, the Court dismissed Plaintiff's FAC for

9   failure to comply with Federal Rules of Civil Procedure Rule 8.  The FAC failed to satisfy the

10  requirements of Rule 8 by not providing a "short and plain statement" for each claim.

11  Specifically, the FAC was "argumentative and without merit."  The FAC was also  "extremely

12  verbose, meandering, and conclusory without providing the necessary facts."  While the Court did

13  allow for leave to amend,  the Court instructed Plaintiff that should he "elect to file an amended

14  complaint, the Court will screen the complaint pursuant to 28 U.S.C. § 1915(e)(2)[7] before it will

15  be necessary for Defendants to answer."

16         A Second Amended Complaint ("SAC") was filed on July 5, 2006.  On December 5, 2006,

17  the Court dismissed Plaintiff's SAC for failure to comply with Rule 8 but granted Plaintiff leave to

18  

19         [5]  *See Yeager v. City Manager, et al.,* Case No. 04CV1431JM(NLS).

20         [6]  In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court espoused a "strong federal
    policy against federal-court interference with pending state judicial proceedings." *H.C. v. Koppel*, 203
21  F.3d 610, 613 (9th Cir. 2000) (internal quotation and citation omitted).  The *Younger* principle applies
    to civil proceedings in which important state interests are involved.  *See* Columbia Basin Apartment
22  Ass'n v. City of Pasco, 268 F.3d 791, 799 (9th Cir. 2001).  "Absent extraordinary circumstances,
    *Younger* abstention is required if the state proceedings are (1) ongoing, (2) implicate important state
23  interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims." *Id. (*internal
    quotation and citation omitted).  A case must be dismissed when the *Younger* doctrine applies.  *See*
24  *id.*

25         [7]  Section 1915 governing proceedings *in forma pauperis* states in pertinent part:
              (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid,
26            the court shall dismiss the case at any time if the court determines that—
               (A) the allegation of poverty is untrue; or
27            (B) the action or appeal—
                    (i) is frivolous or malicious;
28                 (ii) fails to state a claim on which relief may be granted; or
                   (iii) seeks monetary relief against a defendant who is immune from such relief.

1   amend once again.  The Court, however, cautioned Plaintiff that for the

2       amended complaint to be successful, Plaintiff must demonstrate a basis for federal
        subject matter jurisdiction, must allege separate causes of action, must state a
3       constitutional or statutory basis for each cause of action, and must allege facts showing
        each defendant's personal involvement in the wrongful act alleged in each cause of
4       action, as well as Plaintiff's harm or injury.

5   As explained below, this was simply not done in the TAC.

6       Plaintiff filed his TAC on January 5, 2007.  The TAC alleges 17 separate claims for relief

7   purporting multiple constitutional violations by the various defendants.  The gravamen of

8   Plaintiff's claims all stem from his misdemeanor criminal conviction.

9                          **II.    DISCUSSION**

10  A.     Legal Standard

11      Defendants have moved to dismiss Plaintiff's entire suit under Rule 12(b)(1) of the Federal

12  Rules of Civil Procedure for lack of subject matter jurisdiction, and under Rule 12(b)(6) for failure

13  to state a claim upon which relief can be granted.

14      A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court over the

15  subject matter of the complaint. Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited

16  jurisdiction and possess 'only that power authorized by Constitution and statute.'"  *Sandpiper*

17  *Village Condominium Ass'n., Inc. v. Louisiana-Pacific Corp.*, 428 F.3d 831, 841 (9th Cir. 2005).

18  Limits upon federal jurisdiction must not be disregarded or evaded.  *See Owen Equipment &*

19  *Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  "A federal court is presumed to lack

20  jurisdiction in a particular case unless the contrary affirmatively appears."  *A-Z Intern. v. Phillips*,

21  323 F.3d 1141, 1145 (9th Cir. 2003) (internal quotation and citation omitted).  It is the burden of

22  plaintiffs to persuade the Court that subject matter jurisdiction exists.  *See Hexom v. Oregon Dept.*

23  *of Transp.*, 177 F.3d 1134, 1135 (9th Cir. 1999).

24      A motion to dismiss for lack of subject matter jurisdiction may be "facial" or "factual."

25  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004), *cert. denied,* 544 U.S.

26  1018 (2005).  A facial attack challenges the sufficiency of the jurisdictional allegations in the

27  complaint.  *See id.*  In contrast, a factual attack challenges the substance of a complaint's

28  jurisdictional allegations.  *See St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).  If the

1    defendant brings a facial attack, a district court must assume that the factual allegations in the

2    complaint are true and construe them in the light most favorable to the plaintiff. *See Love v.*

3    *United States,* 915 F.2d 1242, 1245 (9th Cir. 1990). A Rule 12(b)(1) motion will be granted if, on

4    its face, the complaint fails to allege grounds for federal subject matter jurisdiction as required by

5    Rule 8(a) of the Federal Rules of Civil Procedure. *See Warren v. Fox Family Worldwide, Inc*. 328

6    F.3d 1136, 1139 (9th Cir. 2003).

7         A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims

8    asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *See Navarro v. Block*, 250 F.3d 729, 731 (9th

9    Cir. 2001). Rule 12(b)(6) permits dismissal of a claim when the claim lacks a cognizable legal

10   theory or there are insufficient facts alleged to support plaintiff's theory. *See Balistreri v. Pacifica*

11   *Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering the sufficiency of a complaint

12   under Rule 12(b)(6), a court may grant a motion to dismiss if "it appears beyond doubt that the

13   plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

14   *(citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In resolving a Rule 12(b)(6) motion, the

15   court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all

16   well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of

17   facts to support a claim that would merit relief. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336,

18   337-38 (9th Cir. 1996). If a complaint is found to fail to state a claim, the court should grant leave

19   to amend unless it determines that the pleading could not possibly be cured by the allegation of

20   other facts. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

21        The Court also recognizes the mandate to construe a *pro se* plaintiff's pleadings liberally in

22   determining whether a claim has been stated. *See Ortez v. Washington County, State of Oregon*,

23   88 F.3d 804, 807 (9th Cir. 1996). With that said, even *pro se* pleadings must meet some minimum

24   threshold in providing a defendant with notice of the alleged wrongs. *See Brazil v. United States*

25   *Dept. of Navy,* 66 F.3d 193, 199 (9th Cir. 1995). Courts are not required "to swallow the plaintiff's

26   invective hook, line, and sinker;  bald assertions, unsupportable conclusions, periphrastic

27   circumlocutions, and the like need not be credited." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.

28   1996).

B.      Analysis

Although Plaintiff's TAC is 83 pages long, it is extremely short on relevant detail.  Overall, the TAC is argumentative, prolix, replete with redundancy, and largely irrelevant.  From what the Court can glean from the various pleadings, all of Plaintiff's claims for relief derive directly from, or are inextricably intertwined with, Plaintiff's criminal anchorage violations.  Plaintiff appears to allege an over-arching conspiracy by the Defendants regarding the enforcement of the local anchorage provisions.  Plaintiff alleges that all of his problems with the police, the legal system and the subsequent damage to his vessel are the product of unconstitutional or otherwise unlawful anchoring regulations.

In order to bring this case under the guise of a federal question, Plaintiff has made extensive use of terms such as *force majeure*, search and seizure, due process, equal protection, Commerce Clause, and freedom of association while making vague, non-specific claims against the various defendants.  The use of these terms however, does not in themselves create a basis for relief.  Federal district courts have original jurisdictions in actions "arising under the Constitution, laws or treaties."  28 U.S.C. § 1331.  Actions arising under federal statutes can create federal jurisdiction.  However, when the federal claim is insubstantial, it cannot serve as the basis for federal question jurisdiction.  As courts of limited jurisdiction, federal courts can only adjudicate those claims that involve diversity of citizenship, a federal question, or to which the United States government is a party.  In the instant case, there is no diversity of citizenship alleged.  A review of the TAC as a whole illustrates that there is no substantial federal claim being asserted.

In the preliminary section of the TAC in a paragraph entitled "The claim for relief" Plaintiff states:

> The Defendants and Active Participants have: with premeditation, with deceit, oppression, fraud, and malice violated the constitutional rights of Plaintiff by enforcing the ban on anchorage with access to shore, and *force majeure*, resulting in monetary losses, deprivation of property, and collateral damages.  He is entitled to payment for those losses and damages, and the mental and physical torture they've inflicted.  He is entitled to have the vessel *The Generic*[8] returned without fine or fee.  Final relief will the ordinances be found un-constitutional.

Compl. at 10.

_____

[8]  Plaintiff owns a 27 year old sailing vessel known as *The Generic*.

1    Similarly, in the preliminary section of the TAC in a paragraph entitled "The demand for

2  judgment" Plaintiff states:

3       First: The ordinances in question, enforcement, and prosecution comply the Supremacy
        Clauses [sic].  Second: The ban or obstruction of anchorage and *force majeure* be
4       found unconstitutional.  Third: Compensation for the wrongful harassment, arrests,
        imprisonment, prosecution, including the taking of property, the damages to property.
5       Fourth: Plaintiff be awarded monetary, general, specific, exemplary, collateral, and
        punitive damages caused by the creation and enforcement of unlawful ordinances.
6       Fifth: Plaintiff demands all criminal records caused by the unlawful actions of the
        Defendants and Active Participants be expunged.  Sixth: An order to have his [sic] *The*
7       *Generic* returned without fine or fee.  Seventh: The creation of an anchorage without
        obstruction to shore either physical or by ordinance.
8  Compl. at 10.

9    Plaintiff also purports to bring this action under the guise of an admiralty action.  Without

10  discussing the legitimacy of this designation, the Court examines Plaintiff's claims.  A claim falls

11  within the federal court's admiralty jurisdiction if the actions complained of have a maritime situs

12  (occurring on or over navigable waters) and a maritime nexus (a significant relationship to

13  traditional maritime activity).  *See Guidry v. Durkin,* 834 F.2d 1465, 1469 (9th Cir. 1987).  The

14  Supreme Court has adopted an expansive application for the maritime nexus requirement.  *See*

15  *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 672 (1982).  The following factors are to be

16  considered to determine whether a significant relationship to traditional maritime activity exists:

17  (1) traditional concepts of the role of admiralty law; (2) the function and role of the parties; (3) the

18  types of vehicles and instrumentalities involved; and (4) the causation and nature of injury

19  suffered.  *See Guidry,* 834 F.2d 1465 at 1470-71.

20    Plaintiff challenges the constitutionality of San Diego's anchorage regulations.  Local

21  anchoring laws similar to those in and around San Diego Bay and Mission Bay have long been

22  upheld by the United States Supreme Court.  *See e.g., U.S. v. St. Louis & M.V. Transp. Co.*, 184

23  U.S. 247, 255 (1902) (finding that local anchoring law did not violate the Commerce Clause);

24  *Cushing v. The John Fraser*, 62 U.S. 184, 187 (1858) (noting that local authorities have a right to

25  prescribe at what wharf a vessel may lie, and how long she may remain there);  *Randal T. Barber*

26  *v. State of Hawai'i*, 42 F.3d 1185, 1193 (9th Cir. 1994) (noting that there is a longstanding

27  recognition by the courts that anchorage and mooring rules are best left to the states in the absence

28  of compelling interests to the contrary).  Even despite the longstanding recognition towards local

1    anchoring laws, Plaintiff's challenge of the local ordinance is still unsuccessful because he is

2    barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

3          1.    *Heck v. Humphrey*

4          Defendants appropriately seek to dismiss Plaintiff's TAC for failure to state a claim

5    pursuant to *Heck*.  In *Heck*, the Supreme Court held that "a state prisoner cannot recover damages

6    in a [civil] suit if a judgment in favor of the plaintiff 'would necessarily imply the invalidity of his

7    conviction or sentence . . .  unless the plaintiff can demonstrate that the conviction or sentence has

8    already been invalidated.'"  *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006) (*quoting Heck*,

9    512 U.S. at 487).  In order to recover damages for an allegedly unconstitutional conviction or

10   imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction

11   or sentence invalid, a plaintiff must prove that the conviction or sentence has been reversed on

12   direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make

13   such determination, or called into question by a federal court's issuance of a writ of habeas corpus,

14   28 U.S.C. § 2254.  *See Heck*, 512 U.S. at 486-87.  Plaintiff has not shown that his conviction has

15   already been invalidated and no exception to *Heck*'s bar applies.

16         Under a section entitled "<u>Demand for Relief</u>" for the second cause of action, Plaintiff

17   includes two tables outlining his request for specific damages for the third cause of action of *Force*

18   *Majeure*. Compl. at 32-33.  Table One is entitled "Specific Damages For Enforcement of SDMC

19   63.25.71" requesting  $46,340 in damages.  *Id.* at *32.*  Table Two  is entitled "Punitive Damages to

20   SDC for Using the Criminal Justice System to Enforce Unconstitutional Ordinance 63.25.71"

21   requesting $5,600,000 in damages.  *Id.* at 33.  Plaintiff also includes two tables outlining his

22   request for damages for his fourth cause of action, Negligent Fire Fighting Training.  Compl. at

23   36-39.  Table Three is specifically entitled "Fire Damage and Repair Cost Estimate" and requests

24   $42,360 in damages.  *Id.* at 36-38.  Table Four is specifically entitled "Living Expenses From

25   [February 6, 2005,] Fire to Mission Bay Anchorage Jail Time" and requests $5,630 in damages.

26   *Id.* at 38-39.  Plaintiff's "tables" in the TAC clearly indicate how  Plaintiff's requests for damages

27   all stem from his underlying criminal conviction.  The following passages from the TAC further

28   illustrate this point.

Under a section entitled "Demand for Relief" for the first cause of action, Plaintiff states the following:

> ". . . Addition [sic] violations may be added and Defendants will be identified. Violation of *force majeure* protections. SDUPD Officer Abbey ID 2867 and three other SDUPD officers. Harassment and threats of impound while working on problem with diesel engine. SDUPD does not train officers of the concept of *force majeure*.

Compl. at 21.

Under a section entitled "Supporting Facts" for the first cause of action, Plaintiff states the following:

> On [February 1, 2005,] Sgt. John Forsyth [and] Lt. Garrity stopped Plaintiff while he was attempting to his [sic] access his kayak near the Avis Rental Car facility. They interrogated him, checking to see if a dinghy was moored on the beach. Plaintiff had to deny the kayak was his, but it was. They threatened to arrest for trespass on SDUPD property if Plaintiff is found on that beach. They radioed the harbor patrol to check on the kayak and released Plaintiff. Plaintiff then paid someone at the dinghy dock to row to the beach to get the kayak. They had to wait for an hour until the harbor patrol vessel left the area, as they were keeping watch to impound the kayak and arrest Plaintiff for trespass. Plaintiff eventually retrieved his kayak.

Compl. at 21.

Under a section entitled "Demand for Relief" for the second cause of action, Plaintiff states the following:

> 39. Count 17: The following right has been violated: The SDUPD has no regard has no regard for the rights of the people who sail into their harbor. The intentional purpose of creating and enforcing unlawful ordinances that are nothing less than streaks of evil. This ill wind shrouds their police in a blinding arrogance, who then slash and burns anyone at anchor, under the pretense criminal justice.

Compl. at 27.

Under a section entitled "Supporting Facts" for the sixth cause of action, Plaintiff states: The following rights were violated: The [San Diego City] used its police power to capture *The Generic* and alleged protection of SDC Lifeguards. *The Generic* was captured on [July, 02, 2004] and again [November 8, 2004], and kept for [five] months. They boarded *The Generic* shackled Plaintiff in irons and was hauled to the brig, because he was denied access to *The Generic* and gear so that pirates could complete their work unhindered.

Compl. at 48.

A substantial part of the TAC reargues the same set of facts the trial court and/or jury found against Plaintiff presumably resulting in his conviction and sentence. Plaintiff's convictions have not been overturned by the appropriate means. A judgment in his favor now "would necessarily imply the invalidity of his conviction." *Id.* Since *Heck* is directly on point here,

1   Plaintiff's claims are barred to the extent they challenge his conviction and sentence resulting from

2   the anchorage violation.  Defendants' Motion to Dismiss Plaintiff's TAC for failure to state a

3   claim pursuant to *Heck* is granted.

4          2.      *Abstention Doctrine*

5          The Defendants also seek dismissal of the TAC under the abstention doctrine.  The

6   *Rooker-Feldman* [9] doctrine prevents the lower federal courts from exercising jurisdiction over

7   cases brought by "state-court losers" who challenge their "state-court judgments rendered before

8   the district court proceedings commenced."  *Exxon Mobil Corp. v. Saudi Basic Industries Corp*.,

9   544 U.S. 280, 284 (2005).

10          Under a section entitled "Supporting Facts" for the first cause of action, Plaintiff states the

11   following:

12          During the time in San Diego Bay it was pure hell.  [Plaintiff] wanted to leave but
            needed to stay to complete motions and replies for a [San Diego] Superior Court civil
13          action against the [San Diego City] stating the unconstitutionality of the prohibition
            of anchorage in Mission Bay and criminal anchorage charges.  Plaintiff made a deal
14          with DPA Ellen Miles to permanently leave SDUPD port under the condition he is
            allowed to remain anchored through [June 8, 2004]. . . . [Plaintiff] had intended to sail
15          to and from San Clemante Island's Pyramid Cove many time during the summer and
            fall to test the new gear.  Only problem, [it is] a navy bombing range.  All the gear on
16          *The Generic* was new, including the wind sailing vane. . . .

17   Compl. at 23.

18          The *Rooker-Feldman* doctrine applies where a party in effect seeks to take an appeal of an

19   unfavorable state-court decision to a lower federal court.  *See Lance v. Dennis*, 546 U.S. 459

20   (2006).  The *Rooker-Feldman* doctrine includes three requirements: (1) the party against whom the

21   doctrine is invoked must have actually been a party to the prior state-court judgment or have been

22   in privity with such a party; (2) the claim raised in the federal suit must have been actually raised

23   or inextricably intertwined with the state-court judgment; and (3) the federal claim must not be

24   parallel to the state-court claim.  *See Lance v. Davis,* 546 U.S. 459 (2006).  Since all three

25   requirements are met, Defendants' Motion to Dismiss Plaintiff's TAC for failure to state a claim

26   pursuant to the *Rooker-Feldman* doctrine is granted.

27   _____

28          [9]  *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416 (1923);  *District of Columbia Court of Appeals* v. *Feldman*, 460 U.S. 462, 483, n.16 (1983).

1          3.      *Immunity*

2          In addition to the immunity provided under *Heck* and *Rooker-Feldman,* several of the

3    Defendants are also protected under other immunity doctrines.

4                    a.      *Sovereign Immunity*

5          The Public Entity Defendants are protected under the doctrine of sovereign immunity.  The

6    Eleventh Amendment of the United States Constitution prohibits suits against  a state and its

7    agencies and departments for legal or equitable relief.  *See Federal Maritime Commission v. South*

8    *Carolina State Ports Authority,* 535 U.S. 743, 753 (2002).  The jurisdictional bar applies

9    regardless of the nature of relief sought.  *See Pennhurst State Sch. & Hosp. v. Halderman,* 465

10   U.S. 89, 100 (1984).  "The Eleventh Amendment's jurisdictional bar covers suits naming state

11   agencies and departments as defendants, and applies whether the relief sought is legal or equitable

12   in nature."  *Brooks v. Sulphur Springs Valley Elec. Co-op.,* 951 F.2d 1050, 1053 (9th Cir. 1991)

13   (quotation omitted), *cert. denied*, 503 U.S. 938 (1992).  California has not waived its sovereign

14   immunity.  *See Dittman v. California,* 191 F.3d 1020, 1025-26 (9th Cir. 1999), *cert. denied*, 530

15   U.S. 1261 (2000).  State immunity extends to state officers who act on behalf of the state and can

16   therefore assert the state's sovereign immunity.  For example, a state actor, such as a law

17   enforcement officer, is entitled to qualified immunity in an action filed under § 1983 if his or her

18   conduct during a criminal investigation either does not violate a federal constitutional right, or the

19   constitutional right was not clearly established on the date of the alleged violation.  *See Saucier v.*

20   *Katz*, 533 U.S. 194, 201 (2001).

21                   b.      *Judicial Immunity Doctrine*

22         The Judicial Branch Defendants [10] are also protected under the judicial immunity doctrine.

23   *See Harvey v. Waldron*, 210 F.3d 1008, 1012 (9th Cir. 2000).  Judges are "not liable to civil

24   actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are

25   alleged to have been done maliciously or corruptly."  *Stump v. Sparkman*, 435 U.S. 349, 355-56

26   (1978) (internal quotations and citations omitted).  So long as the challenged judicial act is within

27   _____

28         [10]  Defendants Honorable Robert Coates, Esteban Hernandez, R.E.L. Strauss, Peter Deddeh, Robert J. Trentacosta, Lisa Foster, Louis Hanoian are collectively referred to as "Judicial Branch Defendants."

1   the jurisdiction of the court, there is absolute judicial immunity from liability for the act even

2   where there are allegations of conspiracy.  *See Dennis v. Sparkes*, 449 U.S. 24, 27 (1980).  Since

3   Plaintiff's allegations against the Judicial Branch arise from his dissatisfaction with their rulings,

4   the judicial immunity doctrine clearly applies.

5                  c.      *Noerr-Pennington Immunity Doctrine*

6            The SDPTA Defendants[11] and Marina Defendants[12] are also protected by the immunity

7   provided under the *Noerr-Pennington* doctrine.  Plaintiff's Tenth Claim for Relief is entitled

8   "Violation of the Sherman Antitrust Act, and the Clayton Antitrust Act with Deceit, Oppression,

9   Fraud, and Malice...."  In a section entitled "Supporting Facts,"  Plaintiff alleges that "[m]embers

10  of SDPTA meet monthly, and having one attorney for preparation of terms and conditions, and

11  petitioning the SDUPD and [San Diego City], they violate the limitations of the Sherman and

12  Clayton Acts."  Compl. at 61.  The Sherman Antitrust Act is not violated by the association of two

13  or more persons formed for the purpose of petitioning the government.  *See Eastern R. R.*

14  *Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961);  *United Mine Workers*

15  *of Am. v. Pennington*, 381 U.S. 657 (1965).

16           Although the *Noerr-Pennington* doctrine originally immunized individuals and entities

17  from antitrust liability, *Noerr-Pennington* immunity now applies to claims under § 1983 that are

18  based on the petitioning of public authorities. *Manistee Town Center v. City of Glendale,* 227 F.3d

19  1090 (9th Cir. 2000) (City was protected by *Noerr-Pennington* immunity from liability under

20  § 1983 arising from its lobbying of county not to lease space in shopping center).  Furthermore,

21  there is no "conspiracy" exception to the *Noerr-Pennington* doctrine that applies when government

22  officials conspire with a private party to employ government action as a means of depriving other

23  _____

24       [11] Defendants San Diego Port Tenants Association Management and Members, Sharon Bernie-
     Cloward Executive Director are collectively referred to as "SDPTA Defendants."

25

26       [12] Defendants Almar, Ltd., Cabrillo Isle Marina L.P., Randy Short, Nielson Beaumont, Inc.,
     Don Beaumont, Tom Nielson, Rick Krug, Sunroad Marina management Corporation, dba Sunroad
     Resort Marina, Scott MacLaggin, Richard D. Vann, Sheltor Cove Marina, Ltd., Henry Prime Purdon,
27  HIW Associates, LP, dba Harbor Island West Marina, San Diego Yacht Club, San Diego Yacht Club
     Sailing Foundation, Silvergate Yacht Club, Coronado Yacht Club, Coronado Keys Yacht Club, Kona
28  Kai Yacht Club, Driscoll, Inc., Tom Driscoll,  and Shelter Island Yacht Ways are collectively referred
     to as "Marina Defendants."

1    parties of their federal constitutional or statutory rights. See *Empress LLC v. City and County of*

2    *San Francisco*, 419 F.3d 1052, 1057 (9th Cir. 2005);  *City of Columbia v. Omni Outdoor Adver.*

3    *Inc.*, 499 U.S. 365, 382-83 (1991).  Plaintiff's Tenth Claim for Relief is consequently barred under

4    the *Noerr-Pennington* doctrine.

5         Defendants' Motion to Dismiss Plaintiff's TAC for failure to state a claim based on

6    sovereign immunity, the judicial immunity doctrine, and the *Noerr-Pennington* doctrine is granted

7    as to those defendants specifically discussed above.

8         4.    Seventh Claim for Relief

9         The San Diego Unified Port District Defendants ("SDUPD Defendants"),[13]  contend that

10   Plaintiff's Seventh Claim for Relief fails to articulate any cognizable cause of action.  Plaintiff's

11   Seventh Claim for Relief alleges violation of various sections of Title 18 of the United States

12   Code, including *inter alia* Grand Larceny, Theft of Property, Plunder, Theft by Intimidation, and

13   Receipt of Pirate Property.  The Seventh Claim for Relief also alleges obstruction of criminal

14   investigations, breach of duty, culpable negligence, breach of good faith and fair dealing, unfair

15   misappropriation, exploitation of Plaintiff's property, and tortious interference with access to

16   vessel.  Compl. at 49.  Under a section entitled "Supporting Facts" for the Seventh Claim for

17   Relief, Plaintiff states the following:

18        The SDUPD used its police power to capture *The Generic* to protect their fellow
          buccaneers, SBBY, in taking into custody *The Generic,* and stealing and selling all the
19        gear on vessel.  *The Generic* was taken on [May 24, 2005], and the gear was stolen
          during the summer months.  Plaintiff was essentially in the brig, because he was denied
20        access to *The Generic* and gear so that pirates could complete their work unhindered.
          . . .
21
22   Compl. at 53.

23        Plaintiff's Seventh Claim for Relief must be dismissed because Plaintiff has provided no

24   authority or argument supporting his implicit contention that he may maintain a private right of

25   action under this criminal statute.  "Whether a federal statute confers a private right of action where

26   _____

27        [13]  Defendants San Diego Unified Port District, Duane Bennett, Ellen Gross-Miles, Wayne
     Darbeau, Kirk Sanfilippo, Kenneth Franke, Laura Tosatto, George Lange, Officer Michael Hart,
28   Officer Robershaw, Sgt. Robert Michskl, Bruce Hollingsworth, Stephen P. Cushman are collectively
     referred to as San Diego Unified Port District Defendants "SDUPD Defendants."

it does not expressly provide for one depends on four factors: (1) the plaintiff must belong to the class for whose especial benefit the statute was created; (2) the legislature must have shown an intent, either explicitly or implicitly, to create a private remedy; (3) finding an implied cause of action must be consistent with the underlying purposes of the statute; and (4) the cause of action must not be one that has traditionally been left to state law. *See Stupy v. United States Postal Serv.*, 951 F.2d 1079, 1081 (9th Cir.1991). Plaintiff bears the burden of satisfying each of these factors. *Keaukaha-Panaewa Community Ass'n v. Hawaiian Homes Comm'n.,* 739 F.2d 1467, 1470-71 (9th Cir.1984). The dispositive issue is legislative intent, an evaluation of the other elements is not necessary when the court finds that Congress did not intend to create a private right of action. *See Stupy*, 951 F.2d at 1081. Plaintiff has not alleged sufficient facts to satisfy these elements nor is the Court persuaded that Congress intended to create a private right of action here.

### 5.    Plaintiff's Eleventh Claim For Relief

Plaintiff's Eleventh Claim For Relief alleges an American With Disabilities Act ("ADA") violation but fails to specifically state how the ADA was violated. Plaintiff also fails to describe a legal "disability" as defined under 28 U.S.C. § 12102(2). Title 28 U.S.C. § 12102(2)(a) defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." Plaintiff alleges that he was denied access at Mission Bay Park, but fails to identify any building or structure that did not comply with ADA and that he was denied access. Due to the lack of factual specificity, Plaintiff's Eleventh Claim For Relief fails to state a claim upon which relief can be granted.

### 6.    Failure to Comply with Rule 8

Defendants also move to dismiss Plaintiff's TAC because it does not contain a short and plain statement as required by Fed. R. Civ. P. 8(a)(2) and under Fed. R. Civ. P. 41 dismissal is proper. Rule 8(a) provides in pertinent part:

> "[a] pleading which sets forth a claim for relief [shall contain] a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."

Rule 41(b) provides in pertinent part:

> "For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against

- 14 -

1       him.... Unless the court in its order for dismissal otherwise specifies, a dismissal under
    this subdivision ... operates as an adjudication upon the merits."

2

3       Clearly, Plaintiff's TAC fails to comply with the Court's directive to explain plainly how

4   each defendant is implicated by Plaintiff's allegations.  Although Plaintiff purports to identify

5   which causes of action are intended to be asserted against which defendants in the caption of the

6   TAC, examination of the allegations contained in his 83 page TAC does not reveal "who did

7   what"in a manner sufficient to put the individual defendants on notice as to what they purportedly

8   did wrong.  The TAC, more aptly described as a "sailor's tale" rather than a legal complaint, is

9   mostly an incoherent tale similar to a writing journal replete with tedious storytelling, illustrations,

10  charts, and undecipherable commentary.  It in no way resembles the traditional pleading style and

11  it clearly does not provide Defendants with notice of what legal claims are specifically asserted

12  against them.

13      Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair

14  notice and state the elements of the claim plainly and succinctly.  *Jones v. Community Redev.*

15  *Agency*, 733 F.2d 646, 649 (9th Cir. 1984).  The requirement of a short and plain statement means

16  a complaint must include "sufficient allegations to put defendants fairly on notice of the claims

17  against them."  *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).  As stated previously,

18  Complaints that are prolix, replete with redundancy and largely irrelevant do not meet Rule 8's

19  requirement of simplicity, directness and clarity, where even after lengthy perusal it cannot be

20  determined from the complaint who was being sued, for what relief and on what theory.  *See*

21  *McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996).

22      There is nothing "short" or "plain" about Plaintiff's TAC.  As it stands now, Plaintiff's

23  TAC does not adequately notify the individual defendants as to the actual allegations with which

24  they are charged.  Given the number and diversity of the named defendants and the breadth of the

25  allegations, claims which vaguely refer to "defendants" or "active participants" do not suffice.  Of

26  the 83 pages that constitute Plaintiff's Complaint, it appears that if all of the immaterial,

27  impertinent, redundant and scandalous portions are removed, any theoretical claims Plaintiff has

28  could have been set forth in a few pages.  The burden Plaintiff places on the Court and Defendants

1   to wade through 83 pages of rambling narrative (including large sections apparently "cut-and-

2   pasted" from Internet sites) in search of a viable nugget of legal theory is undoubtedly

3   unreasonable.

4          Courts may deny leave to amend based upon bad faith, undue delay, prejudice to the

5   opposing party, futility of amendment, and whether the plaintiff has previously amended the

6   complaint.  *See Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).  "The district court's

7   discretion to deny leave to amend is particularly broad where plaintiff has previously amended the

8   complaint." *Ascon Properties, Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1160 (9th Cir. 1989).  As it

9   stands, the TAC is unintelligible.

10         Plaintiff has shown an utter disregard for the short and plain statement requirement of Rule

11  8 subjecting him to dismissal.  *See, e.g., Corcoran v. Yorty,* 347 F.2d 222 (1965), *cert. den.* 382

12  U.S. 966 (1966) (complaint which is so verbose, confused, and redundant that its true substance

13  was disguised was properly dismissed);  *Hatch v. Reliance Ins. Co.,* 758 F.2d 409 (9th Cir. 195),

14  *cert. denied,* 474 U.S. 1021 (1985) (confusing and conclusory complaint exceeding 70 pages with

15  attachments, was subject to dismissal for want of a short and plain statement of the claim);

16  *McHenry v. Renne,* 84 F.3d 1172, (9th Cir. 1996) ( after the Court allowed repleading twice, a 53

17  page third amended complaint was properly dismissed with prejudice for violation of general

18  pleading rules and court's prior orders);  *Washington v. Baenziger*, 656 F.Supp. 1176, 1177 (N.D.

19  Cal. 1987) (determining that 86 page-long complaint that contained 33 causes of action against 21

20  defendants could be dismissed for failure to contain short and plain statement).  *Harrell v.

21  Directors of Bureau of Narcotics & Dangerous Drugs*, 70 F.R.D. 444 (E.D. Tenn. 1975) (*pro se*

22  complaint dismissed under Rule 12(b)(6) where court is unable to ascertain to proper degree the

23  identity of parties plaintiff seeks to make defendants and the claim being pursued).  While the

24  district judge should first consider less drastic alternatives, the Court  "need not exhaust them all

25  before finally dismissing a case." *See Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th

26  Cir. 1981).

27         The Court has previously dismissed Plaintiffs's First and Second Amended Complaints for

28  failure to comply with Rule 8 requiring that a complaint contain a short and plain statement.

1    While it was hard to earlier envision, it is now apparent that the claims Plaintiff asserts in the

2    operative TAC are even more cryptic than the ones previously asserted in the earlier complaints.

3    While Plaintiff utilizes various federal claims and legal terms of art, they are presented without

4    context or meaning and are merely peppered throughout his brief in a vain effort to establish this

5    Court's jurisdiction.    Plaintiff's TAC suffers from the same defects and infirmities as its

6    predecessors and does not in any way comply with the basic pleading requirements. The Court has

7    twice granted Plaintiff leave to amend.  Allowing Plaintiff  to replead again, would be futile given

8    Plaintiff's flagrant violations of the Court's clear mandate.  According, Defendants' Motion to

9    Dismiss Plaintiff's TAC for failure to comply with Rule 8 and Rule 41 is therefore granted.

10                                   **III.    CONCLUSION**

11          For the reasons discussed, the Court **GRANTS WITH PREJUDICE** Defendants' motions

12   to dismiss. (Doc. Nos. 99, 100, 112, 113, 114, 115, 117, 118, 121).  SDUPD Defendants' Motion

13   for Sanctions (Doc. No. 119) and Motion to Amend/Correct Motion for Sanctions (Doc. 122) are

14   **DENIED**.  Plaintiff's Motion for Leave to File a Brief on the TAC with Exhibits (Doc. No. 96),

15   Plaintiff's Motions to File Papers Using the Court's CM/ECF Service (Doc. Nos. 98, 127),

16   Plaintiff's Motion Request of a Change of Judge with Experience in Admiralty and Maritime Civil

17   Actions (Doc. No. 128), Plaintiff's Motion to Continue Hearing on Motion to Dismiss (Doc. No

18   124), and Plaintiff's Motion to Correct the Docket Report (Doc. No. 216) are **DENIED** as moot.

19

20   **IT IS SO ORDERED.**

21

22   DATED:  June 1, 2007

23                                   _____

24                                   Hon. Roger T. Benitez
                                     United States District Judge

25

26   cc: All parties and respective counsel

27

28